UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF ILLINOIS
ROCK ISLAND DIVISION

| | |
|---|---|
| **INPRO/SEAL COMPANY, LLC**, a Delaware limited liability company, | |
| Plaintiff, | |
| v. | |
| **ORION ENGINEERED SEALS, LLC,** an Ohio limited liability company, and | |
| **MR. WOODROW A. NEPA**, a New York citizen. | CIVIL ACTION NO: 4:16-cv-4180 |
| Defendants. | |

**COMPLAINT**

Plaintiff Inpro/Seal Company, LLC (hereinafter "Inpro/Seal") states the following Complaint against Defendants Orion Engineered Seals, LLC (hereinafter "Orion") and Mr. Woodrow A. Nepa:

**PARTIES**

1.   Inpro/Seal is a limited liability company organized and existing under the laws of the Commonwealth of Delaware, having its principal place of business and corporate office located within this judicial district at 4221 81st Ave. W., Rock Island, IL 61201.

2.   Upon information and belief, Orion, is an Ohio limited liability company having a principal place of business and corporate office located at 5298 River Rd., Cincinnati, OH 45233.

1

3. Upon information and belief, Mr. Nepa is a New York citizen whose last known address is 521 Kashong Road Geneva, NY 14456.

## JURISDICTION AND VENUE

4. This is a civil action arising primarily under the Lanham Act, 15 U.S.C § 1051, *et seq.*, for false advertising, and under the Illinois Trade Secrets Act, 765 ILCS 1065 § 1, *et seq.*, for trade secret misappropriation.

5. This Court has jurisdiction over the subject matter of Plaintiff's claims pursuant to 15 U.S.C. § 1121 (actions arising out of the Lanham Act), 28 U.S.C. § 1331 (federal question jurisdiction), 28 U.S.C. § 1338 (general jurisdiction for unfair competition), and 28 U.S.C. § 1367 (supplemental jurisdiction).

6. This Court has personal jurisdiction over Defendant Orion under 735 ILCS 5/2-209 (the "Illinois Long Arm Statute") subsections (a)(1) and (a)(2) because they conduct or have conducted business in this District, have established systematic and continuous activity in this District, and because they committed acts of false advertising, unfair competition, and trade secret misappropriation in this District.

7. This Court has personal jurisdiction over Defendant Nepa under the Illinois Long Arm Statute subsections (a)(1), (a)(2), and (a)(7) because he conducts or has conducted business in this District, because he committed the acts of unfair competition and trade secret misappropriation in this District, and because he entered into contractual agreements with Inpro/Seal in this District.

8. Venue is proper in this Court pursuant to 28 U.S.C. §1391(b) because a substantial part of the events or omissions giving rise to the claims occurred in this District.

**RELEVANT FACTS**

9. Inpro/Seal is in the business of manufacturing, distributing, and selling precision engineering bearing seals and shaft seal assemblies, as is evidenced by its ownership of multiple federal trademark registrations for various marks for use on bearings, bearing isolators, and related goods, including but not limited to U.S. Reg. Nos. 4,253,562 and 2,445,624 (the "Marks"), as well as multiple patents for inventions relating to rotating equipment, namely bearing seal and shaft seal technologies, an exemplary sampling of such patents as listed below.

10. On June 22, 1993, U.S. Pat. No. 5,221,095 ("static and dynamic shaft seal assembly") issued.

11. On January 3, 1995, U.S. Pat. No. 5,378,000 ("shaft seal assembly") issued.

12. On May 16, 2000, U.S. Pat. No. 6,062,568 ("bearing isolator with air purge") issued.

13. On July 16, 2002, U.S. Pat. No. 6,419,233 ("shaft seal assembly") issued.

14. On May 30, 2006, U.S. Pat. No. 7,052,014 ("snap together bearing isolator") issued.

15. On August 15, 2006, U.S. Pat. No. 7,090,403 ("articulated seal") issued.

16. On March 17, 2015, U.S. Pat. No. 8,979,093 ("pressure balanced shaft seal assembly") issued.

17. Inpro/Seal's United States Patents listed in paragraphs 8-14 (collectively "Patents") all disclose inventions that either are, or are related to, non-contacting bearing isolators and/or non-contacting shaft seal assemblies for use with rotating equipment, which generally include a rotating component and a static component that do not make contact with one another during use.

18.     Bearing isolators and/or shaft seal assemblies often increase the life of a bearing by preventing ingress of contaminants into the bearing and/or preventing egress of lubricant from the bearing.

19.     Non-contacting bearing isolators and/or non-contacting shaft seal assemblies generally provide benefits over contact bearing isolators and/or shaft seal assemblies, which benefits include but are not limited to reduced power requirements for the associated rotating equipment, increased longevity of the associated bearing, and a longer service life of the non-contacting bearing isolator and/or non-contacting shaft seal assembly as compared to the contacting counterparts.

20.     Plaintiff is one of the, if not the, preeminent manufacturer(s) and seller(s) of these non-contacting, bearing isolators, shaft seal assemblies, and related products, including products that practice all of the inventions disclosed in the Patents, doing so under the Marks.

21.     An Inpro/Seal product brochure advertising the non-contacting and bearing isolators and shaft seal assemblies is included as **Exhibit A** to this Complaint.

22.     The brochure in Exhibit A was in circulation at least as early as 2011.

23.     Plaintiff manufactures and sells at least three distinct products or categories of products that may be custom designs particular to a specific customer, which categories are: (i) non-contacting bearing isolators (including at least custom designs of products sold under the trademarks "VBX®" and "VBXX®"); (ii) electrostatic shaft grounding products that may be used with or without non-contacting bearing isolators (including at least the products sold under the trademarks "CDR®" and "MGS®"), and (iii) shaft seal assemblies (including at least the products sold under the trademark "Airmizer®", (custom designs from (i)-(iii) together, the "Customized Products").

24. Plaintiff's Customized Products are not advertised, distributed, marketed, or otherwise disclosed on the open market.

25. An Inpro/Seal product brochure advertising, generally, Inpro/Seal's ability to manufacture and design Customized Products is included as **Exhibit B** to this Complaint.

26. The brochure in Exhibit B was in circulation at least as early as 2011.

27. The designs of the Customized Products, including all drawings, schematics, prototypes, and mask works ("Customized Product Materials"), are produced on a customer-by-customer basis, through a sales and manufacturing process that requires: the customer providing very specific, detailed information that may include the machine dimensions, operating conditions, temperatures, pressures, friction levels, electrostatic environment, and other factors; a design, manufacture, and installation process specific to the demands of the factors disclosed by the customer to allow Inpro/Seal to specially manufacture Customized Products needed; and significant, expansive confidentiality obligations for Inpro/Seal employees and other persons involved in the design process, customers in receipt of any Customized Product Materials, and any other third parties given access to the Customized Product Materials, via either and/or both notices placed on the Customized Product Materials directly and non-disclosure and confidentiality agreements executed with Inpro/Seal.

28. Inpro/Seal's purchasers of Customized Products are not known to the general public, nor are they known to industry competitors.

29. Inpro/Seal maintains its customer list of Customized Products as confidential, proprietary information that is the subject of significant measure to maintain the secrecy thereof, including but not limited to: nondisclosure agreements executed by all Inpro/Seal employees, contractors, and other personnel with access to such customer lists, and such agreements

containing explicit non-compete and non-solicitation terms; retention of all employee computers and electronic devices with access to such customer lists upon termination of employment thereof, including standard procedures of "scrubbing" all data on such computers and devices before re-issuing such devices to other or new employees; and withholding such customer lists from any and all public reports, advertisements, marketing, and other publications and/or materials.

30. Inpro/Seal further maintains the confidentiality of all customer information relating to customers of Customized Products and the information obtained for the design of such Customized Products in substantially the same ways as those methods discussed in paragraph 24.

31. An exemplary Inpro/Seal Customized Product design drawing, with confidential drawings and customer information redacted to maintain confidentiality, is included as **Exhibit C** to this Complaint.

32. The design drawing in Exhibit C was created in 2011 and contains the confidentiality and proprietary materials notice and restrictions of use thereon.

33. Upon information and belief, Defendant Orion is a competitor of Inpro/Seal, selling bearing seals, shaft seals, and related products to the same or similar industries.

34. On September 5, 2011, Randall L. Jaskot whose last known address is S42 W34190 Hidden Valley Drive Dousman, WI 53118, left the Regional Manager position at Inpro/Seal, and later joined Defendant Orion after its formation as an officer thereof.

35. Mr. Jaskot had worked for Plaintiff since August 17, 1998.

36. During his time as the Regional Manager at Inpro/Seal, Mr. Jaskot was responsible for selling all Inpro/Seal products, including non-contacting bearing isolators and shaft seal assemblies, including Customized Products, throughout the automotive machine tool

market world-wide, and also for a period of his employment was specifically responsible for the Western United States and Alaska.

37. On December 31, 2011, Defendant Nepa left the Regional Manager position at Inpro/Seal, and formed Defendant Orion as an officer thereof.

38. Defendant Nepa had worked for Plaintiff since December 13, 1999, and was also specifically responsible for the Northeastern United States.

39. During his time as the Regional Manager at Inpro/Seal, Defendant Nepa was responsible for selling all Inpro/Seal products, including non-contacting bearing isolators and shaft seal assemblies, including the Customized Products, specifically throughout the Northeastern United States.On April 30, 2012, James A. Lapaczonek whose last known address is P.O. Box 188 Colona, IL 61241, left the Sales Manager position at Inpro/Seal, and formed Defendant Orion as an officer thereof.

40. Mr. Lapaczonek had worked for Plaintiff since April 30, 1996.

41. During his time as the Regional Manager at Inpro/Seal, and in his prior position as Inside Sales Manager, Mr. Lapaczonek was responsible for selling all Inpro/Seal products, including non-contacting bearing isolators and shaft seal assemblies, including the Customized Products, throughout the United States.

42. Upon information and belief, on or about January 1, 2016, Inpro/Seal discovered the website advertisement of Defendant Orion that used the phrase, "The Orion Engineered Seals BPD represents state of the art bearing technology and is the **ONLY available** non-contacting bearing protection device offered" (the "Advertisement," emphasis in original). A website screenshot of the Advertisement has been filed as **Exhibit D**.

43. Defendant Orion's statements made in the Advertisement are literally false on their face.

44. Plaintiff Inpro/Seal is a competitor of Defendant Orion for the sale of the very products Defendant Orion alleges are "ONLY available" from Defendant Orion.

45. Furthermore, the literal falsity of Defendant Orion's statements is evidenced by the number of competitors Defendant Orion knows also sell such non-contacting bearing isolators, and such competitors include, at least: Garlock, AES Seal, John Crane, Flowserve, Timken, SKF, and Parker.

46. Defendant Orion's use of the Advertisement is material to purchasing decisions of customers due to the durability benefits of non-contacting bearing isolators and shaft seal assemblies, the cost savings, efficiency, and productivity increases such products thus provide.

47. Defendant Orion maintains sole control over its website.

48. Upon information and belief, Defendant Orion placed the Advertisement on its website, on or about 2015.

49. Defendant Orion's statements were made willfully and with knowledge of the falsity thereof, as demonstrated by the knowledge of the former employees of Plaintiff Inpro/Seal, Mr. Jaskot, Mr. Nepa, and Mr. Lapaczonek.

50. Defendant Orion's use of the false Advertisement has caused, and continues to cause, irreparable harm to Plaintiff's business and ability to compete with Defendant Orion.

51. Defendant Orion sells products that compete with the Customized Products.

52. Due to the amount and type of confidential and proprietary information of Inpro/Seal required to manufacture and sell the Customized Products, Defendant Orion could not have made nor sold its competing products without access to and misappropriation of

8

Inpro/Seal's confidential information, including but not limited to: Customized Product Materials, customer lists, methods, processes, and other proprietary information related to the Customized Products (the "Confidential Information").

53. Inpro/Seal's Confidential Information is the subject of reasonable efforts to maintain the secrecy thereof.

54. Mr. Jaskot, Defendant Nepa, and Mr. Lapaczonek, by virtue of the employment with Inpro/Seal, all had access to Inpro/Seal's Confidential Information.

55. Mr. Jaskot, Defendant Nepa, and Mr. Lapaczonek each executed nondisclosure agreements as part of their employment obligations.

56. Upon termination of employment with Inpro/Seal, Inpro/Seal reclaimed each work computer in the possession of Mr. Jaskot, Defendant Nepa, and Mr. Lapaczonek, and Inpro/Seal backed up the hard disks thereof to CDs held by Inpro/Seal before the hard disks were wiped and re-issued to other Inpro/Seal employees.

57. Upon information and belief, Mr. Jaskot, Defendant Nepa, and Mr. Lapaczonek violated their confidentiality obligations by retaining possession and making use of the Confidential Information.

58. Defendants' acts of misappropriation include but are not limited to: the retention and use of Inpro/Seal's customer lists to identify and sell products competing with the Customized Products; the retention and use of Customized Product Materials to manufacture Orion's products; and the retention and use of Inpro/Seal's information disclosing its proprietary processes and methods of design and manufacture of the Customized Products.

59. Upon information and belief, Defendant Nepa used personal funds to purchase or acquire Computer Numerical Control Machines ("CNC Machines") that would enable Defendant Nepa and Defendant Orion to manufacture products competitive with the Custom Products.

60. Upon information and belief, Defendant Nepa used the CNC Machines which he personally owned to manufacture products competitive with the Custom Products, using Plaintiff's proprietary and confidential specifications and designs (the "Infringing Products").

61. Upon information and belief, Defendant Nepa and Defendant Orion sold Infringing Products to multiple customers of Plaintiff, specifically including but not limited to Goulds and Summit.

62. Defendant Orion's Infringing Products include but are not limited to its "Pneumatic Sealing Device" and "Bearing Protection Device" product lines. Website screenshots and product brochures illustrating these products have been filed with this complaint as **Exhibit E**.

63. Upon information and belief, the Infringing Products shown in Exhibit E were first produced on or about January 1, 2014.

64. Upon information and belief, Infringing Products similar to those shown in Exhibit E were sold by Defendant Orion to Inpro/Seal's customers at least as early as January 1, 2013.

65. Upon information and belief, Defendant Orion has been producing Infringing Products since Orion was incorporated on September 19, 2011.

66. Since at least as early as January 1, 2013, Inpro/Seal's sales of Customized Products to some of its customers dropped significantly due to Defendants' sales of Infringing Products.

67. Upon information and belief, Defendant Nepa is no longer employed by or otherwise affiliated with Defendant Orion.

68. Upon information and belief, Defendant Nepa continues to seek opportunity to sell Infringing Products.

69. Defendants' misappropriation of the Confidential Information has caused, and continues to cause, irreparable harm to Plaintiff's business and ability to compete with Defendant Orion, and subjects Plaintiff to unreasonable and significant risk of loss due to the use, disclosure, and potential future use and disclosure of the Confidential Information.

## COUNT I

### Federal False Advertising
### (15 U.S.C. § 1125(a))

70. Plaintiff repeats and re-alleges each of the allegations contained in paragraphs 1 through 69 of this Complaint as if fully set forth herein.

71. As stated above, Plaintiff and Defendant Orion are competitors for the sale of non-contacting bearing isolators, shaft seal assemblies, and related products in the same or similar industries.

72. Defendant Orion's statements made in the Advertisement are literally false on their face.

73. Defendant Orion had actual notice of the falsity of the statements made in its Advertisement.

74. Defendant Orion's use of the Advertisement is likely to deceive the relevant purchasing public due to the likelihood that not all purchasers conduct the same levels of research and are aware of all competitors in the market for non-contacting bearing isolators, shaft

seal assemblies, and related products, or due to the likelihood that, for some purchasers, Defendant Orion may be the first and only provider of bearing isolators — contact or non-contact — with which such purchasers have ever dealt.

75. Defendant Orion's placement of the Advertisement on its website distributed the false statements in such Advertisement into interstate commerce.

76. Defendant Orion's use of the false statements in the Advertisement are likely to and have injured Plaintiff, and continue to injure Plaintiff, due to the relationship between the parties as competitors for the sale of non-contacting bearing isolators, shaft seal assemblies, and related products within the same or similar industries

77. By engaging in the distribution of the false statements described above, Defendant Orion has falsely advertised the nature of its goods in violation of the Lanham Act and more specifically 15 U.S.C. § 1125(a).

78. Defendant Orion's distribution of the false statements in commerce was done with actual knowledge of Plaintiff's products that made such statement untrue, and such statements were and remain willful and intentional.

79. Upon information and belief, Defendant Nepa, as the founder and executive officer was responsible for Defendant Orion's false advertising conduct, and/or contributed thereto.

80. Defendants' willful and intentional acts of false advertising have caused and are causing great and irreparable injury and damage to Plaintiff's business in an amount that cannot be ascertained at this time and unless restrained will cause further irreparable injury and damage.

81. Plaintiff is entitled to injunctive relief against Defendants and anyone acting in concert with Defendants to restrain further acts of unfair competition and false advertising, as

well as to recover Defendants' profits, Plaintiff's actual damages suffered in an amount to be determined at trial, plus costs and attorneys' fees pursuant to 15 U.S.C. § 1117.

## COUNT II

### Illinois Trade Secret Misappropriation
### (765 ILCS 1065/1 *et seq.*)

82. Plaintiff repeats and re-alleges each of allegations contained in paragraphs 1 through 81 of this Complaint as if fully set forth herein.

83. Defendants' continued unauthorized use of the Confidential Information and sale of Infringing Products constitutes Trade Secret Misappropriation under the Illinois Trade Secrets Act, 765 ILCS 1065/1.

84. Defendants' continued acts of Trade Secret Misappropriation by making and selling the Infringing Products to Plaintiff's customers has significantly damaged Plaintiff's ability to conduct business, and as a result Plaintiff is entitled to damages to compensate Plaintiff's actual loss and to disgorge Defendants' unjust enrichment under 765 ILCS 1065/4(a).

85. Defendants' acts of misappropriation have been, and continue to be, willful, malicious, and with knowledge, and as a result Plaintiff is entitled to exemplary damages and reasonable attorneys' fees under 765 ILCS 1065/4(b), 5(iii).

86. Defendants' willful and malicious Trade Secret Misappropriation by making and selling the Infringing Products to Plaintiff's customers and continuing to do so has and will continue to irreparably harm Plaintiff's current and future ability to conduct business and prevent unauthorized disclosure and use of its proprietary and Confidential Information, and as a result Plaintiff is entitled to injunctive relief to prevent further acts of misappropriation by Defendants under 765 ILCS 1065/3(a).

87. Defendants' continued possession of Plaintiff's trade secrets subjects Plaintiff to unreasonable and significant risk of future Trade Secret Misappropriation and harm thereby, and as a result the circumstances entitle Plaintiff to specific relief in the form of court-ordered affirmative acts of return and/or destruction of documents and things containing Plaintiff's misappropriated Trade Secrets under 765 ILCS 1065/3(c).

## COUNT III

### Illinois Unfair Competition
### (815 ILCS 510 § 2)

88. Plaintiff repeats and re-alleges each of allegations contained in paragraphs 1 through 87 of this Complaint as if fully set forth herein.

89. Defendants' continued unauthorized use of the false statements in the Advertisement constitutes unfair competition under the Illinois Uniform Deceptive Trade Practices Act, 815 ILCS 510/2.

90. Defendants' statements have been and continue to be willful and with knowledge of the falsity thereof.

91. Defendants' continued acts of unfair competition by falsely advertising the nature of its goods has and will continue to irreparably harm Plaintiff's current and future ability to conduct business, and as a result Plaintiff is entitled to injunctive relief to prevent further unfair competition by Defendants as well as costs and reasonable attorneys' fees under 815 ILCS 510/3.

## COUNT IV

### Illinois Deceptive Trade Misrepresentation
### (815 ILCS 505 § 2)

92. Plaintiff repeats and re-alleges each of allegations contained in paragraphs 1 through 91 of this Complaint as if fully set forth herein.

93. Defendants' continued unauthorized use of the false statements in the Advertisement constitutes unfair competition under the Illinois Uniform Deceptive Trade Practices Act, 815 ILCS 505/2.

94. Due to Defendants' unfair competition and false advertising Plaintiff has been damaged in an amount to be proven at trial and Plaintiff is entitled to recover actual damages or any other amount this court deems proper under 815 ILCS 505/10a, including reasonable attorneys' fees and costs under 815 ILCS 505/10c.

95. Defendants' continued acts of unfair competition by falsely advertising the nature of its goods has and will continue to irreparably harm Plaintiff's current and future ability to conduct business, and as a result Plaintiff is entitled to injunctive relief to prevent further unfair competition by Defendants under 815 ILCS 505/10c.

**WHEREFORE**, Plaintiff respectfully prays for the following relief:

(1) A preliminary injunction enjoining Orion Engineered Seals, LLC, its employees, agents, officers, directors, attorneys, representatives, successors, affiliates, subsidiaries, and assigns from:

(a) making and distributing false statements regarding the status of its non-contact bearing isolators, shaft seal assemblies, or related products;

(b) using any other false description or representation or any other identifier calculated to or likely to cause confusion, deception, or mistake in the marketplace with regard to the non-contacting bearing isolators, shaft seal assemblies, and related products;

(c) making any false representations concerning the Plaintiff directly or indirectly;

(d) making and distributing products embodying or practicing Plaintiff's Confidential Information;

(e) selling or offering to sell to Plaintiff's customers; and

(f) using, distributing, publishing, or otherwise disclosing Plaintiff's Confidential Information to any third party.

(2) A preliminary injunction enjoining Mr. Woodrow Nepa, his employees, agents, officers, directors, attorneys, representatives, successors, affiliates, subsidiaries, and assigns from:

(a) making and distributing false statements regarding the status of Defendant Orion's non-contact bearing isolators, shaft seal assemblies, or related products;

(b) using any other false description or representation or any other identifier calculated to or likely to cause confusion, deception, or mistake in the marketplace with regard to the non-contacting bearing isolators, shaft seal assemblies, and related products;

(c) making any false representations concerning the Plaintiff directly or indirectly;

(d) making and distributing products embodying or practicing Plaintiff's Confidential Information;

(e) selling or offering to sell to Plaintiff's customers; and

(f) using, distributing, publishing, or otherwise disclosing Plaintiff's Confidential Information to any third party.

(3) An order directing Defendant Orion to remove its false Advertisement located at http://orionseals.com/bearing-protection-device/ and any other similar advertisement(s);

(4) An order directing Defendants Orion and Nepa to return and/or destroy all of Plaintiff's Confidential Information in their possession and any other proprietary information of Plaintiff;

(5) An order directing Defendants to file with the Court, with service upon Plaintiff's counsel within thirty (30) days, after entry of such order a verified report setting forth the manner and form in which Defendants have complied with the preliminary injunction and the orders of specific relief;

(6) An order awarding Plaintiff all damages sustained under 15 U.S.C. § 1117(a) in an amount to be proven at trial including lost profits, but in no case less than $569,633;

(7) An order awarding Plaintiff all damages sustained under 815 ILCS 505/10(a) in an amount to be proven at trial including lost profits, but in no case less than $569,633;

(8) An order awarding Plaintiff all damages sustained under 765 ILSC 1065/4 in an amount to be proven at trial including lost profits, appropriate exemplary damages, and an amount sufficient to disgorge Defendant's unjust enrichment, but in no case less than $569,633;

(9) An order awarding pre-and post judgment interest;

(10) An award of Plaintiff's attorneys' fees, expenses, and costs incurred herein;

(11) A trial by jury; and

(12) All other relief to which Plaintiff may be entitled or the Court may deem appropriate.

Respectfully submitted,

_____
JAY R. HAMILTON

COUNSEL FOR PLAINTIFF
INPRO/SEAL COMPANY, LLC